**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 24-21925-CV-WILLIAMS**

GEORGE FITZGERALD II,

    Plaintiff,

v.

DEFENDANT 1, *et al.*,

    Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on former Chief Magistrate Judge Jonathan Goodman's Report and Recommendations (DE 62) ("***Report***") on Plaintiff's Motion for Final Default Judgment (DE 60) ("***Motion***"). Plaintiff, George Edward Fitzgerald, II ("***Plaintiff***") timely objected to the Report (DE 63) ("***Objections***"). After careful review, Plaintiff's objections are sustained, and Judge Goodman's Report is overruled.

**I.   BACKGROUND**

On May 17, 2024, Plaintiff filed a complaint alleging that several unnamed defendants, including Defendant 1, victimized Plaintiff in a "pig-butchering" cryptocurrency scam. (DE 1 ¶¶ 7–8, 13). The purported scam involved convincing Plaintiff that a successful cryptocurrency trader would help him learn to trade if he transferred his assets to a designated trading exchange platform. (*Id.* ¶¶ 19–24). Plaintiff later discovered that the platform was fake, its dashboard mimicking market movements, causing Plaintiff to transfer $180,000 worth of his cryptocurrency-assets, as well as $37,000 in cash, to fraudulent cryptocurrency wallets and accounts. (*Id.* ¶¶ 25–37, 46). After the unnamed defendants disappeared, Plaintiff hired a forensic cryptocurrency tracing firm to trace his

stolen assets on the blockchain.[1] (*Id.* ¶¶ 44–45). The firm identified the cryptocurrency wallet that received Plaintiff's stolen assets, and thereafter, Plaintiff filed a four-count complaint, claiming conversion, unjust enrichment, imposition of constructive trust, and conspiracy. (*Id.* at 8–11).

Subsequent to filing the complaint, Judge Goodman granted Plaintiff's request to serve the unnamed defendants via crypto wallet addresses, Telegram direct messages, and web postings by transferring non-fungible tokens containing links to service documents. (DE 27 at 7). The unnamed defendants failed to respond to the complaint, and after entry of default, Plaintiff filed his initial motion for default judgment. (DE 39). Judge Goodman recommended that the Court deny Plaintiff's initial motion for default judgment without prejudice, finding that Plaintiff had (1) "assert[ed] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omission, or which of the defendants the claim is brought against"; and (2) pled "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." (DE 41 at 6 (quoting *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015))). The Court agreed, dismissed the complaint without prejudice, and gave Plaintiff leave to amend the complaint. (DE 46 at 3).

On March 7, 2025, Plaintiff filed the operative Corrected First Amended Complaint (DE 53) ("***Amended Complaint***"). Having conducted additional discovery into the crypto-

---

[1] A blockchain is a database containing information that can be simultaneously used and shared within a publicly accessible network. *See Blockchain*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/blockchain (last visited Feb. 24, 2026).

currency wallets which received his stolen assets, Plaintiff narrowed his Amended Complaint to one defendant, Teh Yong Hing ("**Defendant**"), the owner of the wallet in question. (DE 53 ¶¶ 1, 46–47). Plaintiff also reduced his claims to three—conversion (Count I); unjust enrichment (Count II); and imposition of constructive trust (Count III). (DE 53 at 8–10). Though Plaintiff eliminated the first issue Judge Goodman identified, Plaintiff failed to correct the issue where each cause of action adopted and realleged the allegations of each preceding count. (*Id.* ¶ 58 ("Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 57 above."); *id.* ¶ 63 ("Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 62 above.")). After Defendant was served again by publication and again failed to respond, (DE 56; DE 57; DE 58; DE 59), Plaintiff filed the instant Motion for Final Default Judgment (DE 60). The Court referred the Motion to Judge Goodman. (DE 61).

In the Report, Judge Goodman recommends that the Motion be denied without prejudice as a shotgun pleading. (DE 62 at 6). The Report finds that, although the Amended Complaint "cur[es] the 'relatively rare sin of asserting multiple claims against multiple defendants without'" specification, (*id.* at 6 (quoting *Weiland*, 792 F.3d at 1223)), "each count [still] adopts the allegations of all preceding counts." (*Id.* at 6). Plaintiff filed Objections (DE 63), arguing that "[w]hile the Amended Complaint contains standard incorporation-by-reference language, each count is individually pled, identifies a single and discrete cause of action, and clearly delineates the specific facts supporting each element of the cause at issue," so the Amended Complaint provides sufficient notice of the claims' substance to avoid characterization as a shotgun pleading. (DE 63 at 6). Based on the foregoing, the Court will conduct an independent inquiry to determine (1)

whether Plaintiff's Amended Complaint is indeed a shotgun pleading; and (2) whether Plaintiff is entitled to a final default judgment.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2). But a court may not enter a default final judgment based solely on the existence of a clerk's default. *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1174 (M.D. Ala. 2008). Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[2]); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations. A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.") (cleaned up).

The decision to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit held that all Fifth Circuit decisions issued before the end of business on September 30, 1981 would become binding precedent in the circuit.

judgments are "generally disfavored" because the Eleventh Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support a plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 n.13 (11th Cir. 2009)).[3]

When a party objects to a magistrate judge's report and recommendation, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Range v. U.S. Postmaster Gen.*, No. 22-12380, 2023 WL 5045056, at *1 (11th Cir. Aug. 8, 2023) (quoting 28 U.S.C. § 636(b)(1)); *see also BNY Mellon Cap. Mkts., LLC v. Paone*, No. 19-cv-81412, 2020 WL 1692011, at *1 (S.D. Fla. Jan. 16, 2020) ("When a magistrate judge's 'disposition' has been properly objected to, district courts must review the disposition *de novo*. However, when no party has timely objected, 'the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation.'") (quoting Federal Rule of Civil Procedure 72(b)(3)).

---

[3] A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); see also *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

### III. DISCUSSION

The Court begins by assessing whether the Amended Complaint's incorporation-by-reference language, alone, warrants its dismissal as a shotgun pleading. Next, the Court will determine whether it has jurisdiction to enter a judgment on behalf of Plaintiff. *See Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted,* No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206) ("[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered."). The Court will then decide whether the Amended Complaint establishes Defendant's liability. And finally, the Court must determine Plaintiff's damages.

### A. *The incorporation-by-reference language does not doom the Amended Complaint.*

The Report recommends dismissing Plaintiff's Amended Complaint without prejudice because each count adopts the allegations of all preceding counts. (DE 62 at 6). Plaintiff argues that dismissal is not warranted because "each count is individually pled, identifies a single and discrete cause of action, and clearly delineates the specific facts supporting each element of the cause at issue." (DE 63 at 6). Plaintiff also argues that the risk of confusion is not present because there is only a single Defendant in this case. *Id*. The Court agrees with Plaintiff.

A shotgun pleading is one that fails "to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Dismissal of a shotgun pleading is appropriate "where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Id*. at

1325 (emphasis in original) (quoting *Anderson v. Dist. Bd. of Trustee of Cent. Fl. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Therefore, the crux of the Court's determination is "whether the [Amended Complaint] gave [Defendant] fair 'notice of the specific claims against [him] and the factual allegations to support those claims.'" *Charles v. GEO Group Inc.,* No. 22-13891, 2024 WL 1619911, at *2 (11th Cir. 2024) (citing *Weiland*, 792 F.3d at 1235).

Plaintiff's Amended Complaint is not such a defective shotgun pleading as it adequately gives the sole Defendant notice of the specific claims against him and the factual basis Plaintiff uses to support those claims. Each count of the Amended Complaint is separately identifiable and independently supported by several paragraphs of factual allegations. (*See generally* Am. Compl.). While the Report admonishes Plaintiff's adoption and incorporation of allegations in the preceding counts (DE 62 at 6), Plaintiff's incorporation-by-reference does not undermine the Court's understanding of the Amended Complaint, especially where, like here, the claims and factual allegations are "brief and easy to comprehend." *Charles*, 2024 WL 1619911 at *3. Moreover, although Plaintiff initially asserted his claims against several unknown defendants, the Amended Complaint is now tailored to one identifiable Defendant—Teh Yong Hing—and asserts only three claims, each of which are supported by factual allegations. Accordingly, the Court does not find it "virtually impossible" to know which allegations of fact are intended to support which claims, and therefore, the Court does not find that the Amended Complaint is a shotgun pleading. *Id*.

### B. *Jurisdiction is Properly Established.*

Finding that Plaintiff's Amended Complaint survives scrutiny, the Court now turns to jurisdiction. "In order to enter a valid default judgment, a court must have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendants." *Pharmacy Co. of Am. v. Royal Mgmt. Co. LLC*, No. 24-60662, 2024 WL 5159816, at *2 (S.D. Fla. Oct. 18, 2024) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)). Therefore, before reaching the merits of Plaintiff's claims, the Court first assesses whether Plaintiff established subject-matter jurisdiction over the action and personal jurisdiction over Defendant Teh Yong Hing.

**1. The Court has Subject-Matter Jurisdiction.**

"Federal Courts are Courts of limited jurisdiction." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (internal citations omitted). To invoke a federal court's diversity jurisdiction, a plaintiff must establish complete diversity between litigants and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The amount in controversy is satisfied where a plaintiff claims a sufficient sum in good faith. *Id*.

Here, Plaintiff alleges that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332. (DE 53 ¶ 4). The Amended Complaint establishes complete diversity amongst the parties because Plaintiff is a resident and citizen of Florida, and Defendant is alleged to be a "Malaysian citizen located in Malaysia." (*Id.* ¶ 6–7). Additionally, Plaintiff establishes the requisite amount in controversy. Plaintiff alleges that the stolen cryptocurrency is now valued at $266,867.94, which is well over the $75,000 jurisdictional

threshold. (*Id*. ¶ 1). Accordingly, taken as true, these allegations establish subject-matter jurisdiction under 28 U.S.C. § 1332.

### 2. The Court has Personal Jurisdiction over Defendant.

This Court has personal jurisdiction over Defendant. Personal jurisdiction is the Court's power to exercise control over the parties, and it must be established before a court has power to render a judgment. *See Strange v. Nescio*, No. 20-80947, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021). "A defendant may defeat subsequent enforcement of a default judgment in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction even if the court entering the default determined that it had personal jurisdiction over the defendant." *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999). Therefore, when deciding a motion for default judgment, the Court has an affirmative duty to evaluate personal jurisdiction. *Strange*, 2021 WL 8945480, at *1.

Two requirements must be satisfied to establish personal jurisdiction over a non-resident defendant: (1) the operative complaint must allege sufficient jurisdictional facts to bring the action within the state's longarm statute; and (2) the plaintiff must demonstrate that sufficient minimum contacts exist between the non-resident defendant and the State to satisfy due process requirements. *Pharmacy Co. of Am.,* 2024 WL 5159816 at *4 (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)).

Plaintiff satisfies the first prong required to establish personal jurisdiction over a non-resident defendant because Florida's longarm statute confers jurisdiction over a defendant who commits a tortious act within Florida or causes injury to persons within Florida arising out of an act or omission by the defendant where the defendant was

engaged in solicitation within Florida. *See* Fla. Stat. 48.193(1)(a). Here, Plaintiff alleges that Defendant "lured" Plaintiff into transferring cryptocurrency to Defendant's fraudulent platform. (DE 53 ¶¶ 21–28). Plaintiff also alleges that Defendant "directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district" through a fraudulent website that is accessible in Florida. (DE 53 ¶ 10). These allegations, accepted as true, satisfy Florida's longarm statute. *Fru Veg Marketing, Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1181 (S.D. Fla. 2012).

Plaintiff also satisfies the second prong of the test to comport with due process. Jurisdiction may be constitutionally asserted under the "minimum contacts" prong whenever a defendant by its own purposeful conduct created a "substantial connection with the forum state." (*Id.*) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985)). "The court has made it clear, however, that so long as it creates a substantial connection with the forum, even a single act can support jurisdiction." *Fru Veg Marketing, Inc.*, 896 F. Supp. 2d at 1181. (internal quotations omitted). Plaintiff alleges that Defendant's fraudulent website is accessible in Florida and can be accessed on the internet through smartphones. (DE 53 ¶ 10). Indeed, users who access the fraudulent website "believe they are trading in an authentic exchange platform," but are in fact only placing simulated trades while Defendant deceitfully diverts the user's funds. (*Id.* ¶ 26). Defendant's purposeful conduct of creating a fraudulent trading platform directed to, and accessible by, Florida residents create a substantial connection with Florida. *See Fru Veg Marketing, Inc.*, 896 F. Supp. 2d at 1181. Accordingly, Plaintiff's allegations sufficiently allege Defendant's minimum contacts with

Florida such that the Amended Complaint establishes personal jurisdiction over Defendant.

### C. *The Amended Complaint Establishes Liability.*

At the outset, the Court must determine which law applies to Plaintiff's claims. A federal district court sitting in diversity applies the substantive state law in which it sits. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015). The Eleventh Circuit has determined that, "at least as to tort claims, the Florida Supreme Court applies the 'most significant relationship' test set forth in Section 145 of the Restatement (Second) of Conflict Laws ('the Restatement')." *Bandyopadhyay v. Defendant 1*, No. 22-cv-22907, 2023 WL 2263552, at *3 (S.D. Fla. Feb. 28, 2023) (citing *Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc.*, F.3d 1110, 1115 (11th Cir. 1996)). Here, Plaintiff is a citizen of Florida, and Plaintiff was present in Florida at the time Defendant converted Plaintiff's cryptocurrency. (DE 60 at 5). Therefore, Florida has the most significant relationship to Plaintiff's claims. *See Bowen v. Li*, No. 23-cv-20399, 2023 WL 4623594, at *5 (S.D. Fla. July 18, 2023) ("Plaintiff was a citizen of California, where he was located when Defendant converted his cryptocurrency. Therefore, because the injury occurred in California, California law applies to Plaintiff's conversion claim.") (cleaned up).

### 1. Conversion (Count I) is Adequately Pleaded.

Under Florida law, "[t]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Batista v. Rodriguez*, 388 So. 3d 1098, 1101 (Fla. Dist. Ct. App. 2024). The Amended Complaint alleges that Plaintiff owned 3.54877 BTC

(Bitcoin) and 49,340.45 USDC (USD Coin) and that Defendant deceived Plaintiff by unlawfully transferring Plaintiff's cryptocurrency from his crypto.com account to a purportedly fraudulent trading exchange named ETX. (DE 53 ¶¶ 1, 25–37). The Amended Complaint also alleges that Plaintiff "suffered damages as a direct and proximate result of Defendant's conversion." (*Id*. ¶ 57). Taken together, these allegations adequately establish a claim for conversion.

### 2. Unjust Enrichment (Count II) is Adequately Pleaded.

To establish unjust enrichment, Plaintiff must allege: "(1) plaintiff has conferred benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *CFLB Partnership, LLC v. Diamond Blue Int., Inc.*, 352 So. 3d 357, 359 (Fla. 3d DCA 2022). The Amended Complaint alleges that Defendant convinced Plaintiff to invest using a fraudulent cryptocurrency exchange that mimicked real-time market movements and depicted false profit gains. (DE 53 ¶ 26). In reliance on Defendant's misrepresentations, Plaintiff made multiple transfers from his crypto.com and CashApp accounts to Defendant's fraudulent platform. (*Id*. ¶¶ 27, 28, 34, 37). Forensic tracking of Plaintiff's cryptocurrency revealed that Defendant moved Plaintiff's cryptocurrency to Binance wallets possessed and controlled by Defendant. (*Id*. ¶¶ 42–57). Plaintiff conferred a benefit upon Defendant in the form of cryptocurrency, and Defendant knowingly and voluntarily accepted and retained the benefit by moving the cryptocurrency to his own wallet. (*Id*. ¶¶ 45–47). Therefore, Plaintiff satisfactorily alleges a claim for unjust enrichment.

### 3. Imposition of a Constructive Trust (Count III) is Adequately Pleaded.

"In order to impose a constructive trust[,] the court must find the following: (1) the existence of a promise express or implied, (2) transfer of the property and reliance thereon, (3) the existence of a confidential relationship, and (4) unjust enrichment." *Silva v. de la Noval*, 307 So. 3d 131, 134 (Fla. 3d DCA 2020). "A confidential relationship is found where confidence is reposed by one party and a trust accepted by the other." *Hutson v. Brooks*, 646 So. 2d 276, 277 (Fla. 2d DCA 1994). "Courts impose constructive trusts either upon property acquired by fraud, or when it is against equity that someone who acquired property without fraud should continue to retain possession." *Silva*, 307 So. 3d 131, 134 (Fla. 3d DCA 2020) (quotations omitted).

Plaintiff adequately establishes a claim for imposition of a constructive trust. Defendant was entrusted with Plaintiff's cryptocurrency and promised that "she would teach Plaintiff how to become a successful cryptocurrency trader." (DE 53 ¶¶ 20, 27, 34, 37). As Plaintiff's trusted instructor, Defendant assisted Plaintiff with accessing and registering for a fraudulent trading account. (*Id*. ¶ 24). Plaintiff relied on Defendant's representations and invested significant funds into the fraudulent account at Defendant's request. (*Id*. ¶ 32). And as a result of several improper transfers, Defendant benefited significantly by moving Plaintiff's cryptocurrency to a Binance wallet possessed and controlled by Defendant. (*Id*. ¶ 45). Accordingly, the Court exercises its equitable powers to impose a constructive trust.

### D. *Plaintiff's Requested Relief*

### 1. Damages and Disgorgement of Property

Plaintiff declares that Defendant converted 3.54877 Bitcoin (BTC) and 49,340.45

USD Coin (USDC). (60-1 ¶ 4 "*Declaration*"; DE 53 ¶ 1). Plaintiff's representations are supported by an investigation report that traces twenty-four (24) transactions. (DE 53-1 at 7) ("*Investigation Report*"). The sum of the transactions "is approximately equivalent to the US dollar amount of $145,715." (*Id.*). According to the Investigation Report, the following chart contains the pertinent transactions between Plaintiff and Defendant:

| Date | Transaction Hash | Initial Receiving Address Name | Initial Receiving Address | Amount Sent* | USD | Trace | Page |
|---|---|---|---|---|---|---|---|
| October 07, 2022 | e133a5a329cca242bdc44e35015b969c84097bfe1a3ff1fbd379bce1286a54e0 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.02335 BTC | $466 | A | 23 |
| October 13, 2022 | 978cc8e682b33ebc9b72f721254e1840544b8f29b1a48de6832a985eda87e1fa | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.02502 BTC | $479 | A | 23 |
| October 14, 2022 | 36ebee51f1690f6aa8da99945f42f6994e34e23c3e9e88bd42425194e399fd9a | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.02469 BTC | $479 | A | 23 |
| October 22, 2022 | 7572902cdbcadb41857b2ec60727fc9fe833f931786ab7364bb08ec51c2ef49b | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.05218 BTC | $1,000 | A | 23 |
| November 09, 2022 | fd20384104801e2a114a80efd29b832c732e2d866aec3ad2236e1e42d46578e8 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.06183 BTC | $1,147 | A | 23 |
| November 29, 2022 | cdd0b5328b2690b78535b99c36d2625f5df0375d5080619b0e28e99d4b478fcf | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.02985 BTC | $484 | A | 23 |
| November 29, 2022 | 6c5d95963f328dbab9af3baf8a228aff94648f32f10caacf9a016ebfabc074cd | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.02979 BTC | $483 | A | 23 |

| Date | Transaction Hash | From | To | Amount | USD Value | Ref | # |
|---|---|---|---|---|---|---|---|
| December 07, 2022 | 9e1c71eaa569a072649971bcc429a9e84351366851fd5208fac51091f5bb510c | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.04777 BTC | $815 | A | 23 |
| December 28, 2022 | c6c910b7b5152af8821be5f0dc221a193e7e7a7dc2efb2c30d34f6fe6a3ed7ac | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.0413 BTC | $690 | A | 23 |
| January 10, 2023 | 34efb43b0823fc00867a5166488ed2d739d03006af21148a17d4397aff02c874 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.05703 BTC | $980 | A | 23 |
| January 10, 2023 | 5960f748b72a80e8e16c8da8a29155f2975c529cecaac1aad559daf94eee3469 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.03959 BTC | $680 | A | 23 |
| January 14, 2023 | 81ca9a6f299b2642d1e5a0752674f264fa77a9baa49802989051750da58e07c1 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.04934 BTC | $981 | A | 23 |
| January 24, 2023 | f5984e507575abcb2c190b34954efdb8669c20c202c076a1f4ff6b5e9087f67b | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.08553 BTC | $1,962 | A | 23 |
| March 13, 2023 | 3cebff06612496eb00e4565c7f86db6320bc82aa7622df13bd44f85fb5fdabda | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.08939 BTC | $1,685 | B | 35 |
| March 21, 2023 | 0x9c74036af6a392e026eb25f943c45e876ba32b0239db80c398f2ebfecbab85b4 | Address c1 | 0x4c9d62b125f679dd7a606b5d0092399387fe09b7 | 38,853.82 USDC | $38,956 | C | 37 |
| March 25, 2023 | 0x43783b93e3ed542d66e751fd6f4f443a9ed3a874f41a70165ff13b7fa2bea97c | Address c1 | 0x4c9d62b125f679dd7a606b5d0092399387fe09b7 | 5,528.03 USDC | $5,526 | D | 39 |
| March 29, 2023 | 0xaf69b3623d421d68c69cc0c0a264ed4014d2d0389bb2549bbdfd8d8b636e5318 | Address c1 | 0x4c9d62b125f679dd7a606b5d0092399387fe09b7 | 4,958.6 USDC | $4,963 | D | 39 |
| April 13, 2023 | 73c44e9f10a5b6876bda77ac27e4d3eadcd40bbd7af5d5b5c871b8f1818e2fbe | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.22635 BTC | $6,769 | E | 42 |
| April 20, 2023 | 6722e5bfbece3ebcb5642c8da0c42b55bb6e20b39b873606ae32b9b69b66e976 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 2.0589 BTC | $60,095 | E | 42 |
| April 20, 2023 | 1c04b4195c854377fcb58ca986d9e0f88e6b8344708a59c7d872a582ad5d7e16 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.01509 BTC | $441 | E | 42 |
| April 20, 2023 | 9bc27908a71bb14d98007305d02feaa77f4d01366649c10555381bc7cc426ca0 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.01027 BTC | $300 | E | 42 |
| April 24, 2023 | 8f03d5854b92a9313af5f2b424bf95742edfa3e3d018a5b66acada7ff8b49f76 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.40174 BTC | $11,229 | E | 42 |
| April 25, 2023 | 44acc5a4695c0f5e4b6d26d319a0089394648c941bb8e1bb2233fd53aeabae46 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.0074 BTC | $204 | E | 42 |
| April 27, 2023 | 7c21acdcba471430ef9d5131d020f77c7e2df358cc666ef310b8f421284eeec3 | Address a1 | 3Qz3ZKmTVSwZDbQvoog44QWE3SWuHRRXDT | 0.1724 BTC | $4,903 | E | 42 |
| **TOTAL CONFIRMED TRANSFERS** | | | | **3.54877 BTC, 49,340.45 USDC** | | | |

(Investigation Report at 18-20).

The above transactions reflect a total deprivation of 3.5488 BTC (Bitcoin) and 49,340.45 USDC (USD Coin). Plaintiff represents that the combined value of the stolen cryptocurrency at the time of the theft was approximately $180,000. (DE 60-1 ¶ 5). However, Plaintiff also states that "the value of Bitcoin has increased since the theft," and the "present-day value of the cryptocurrency assets" combined is $439,239.41 (USD). (*Id*. ¶ 6,8). The combined value was determined on or about June 12, 2025 when Plaintiff filed the instant Motion. Seeing that the value cryptocurrency fluctuates, Plaintiff's "present-day" value will need to be redetermined. Therefore, the Court is unable to ascertain Plaintiff's actual damages at this juncture. Plaintiff must provide the Court with an updated damages calculation for final default judgment to be entered on damages.

2. **Preliminary Injunction**

Finally, Plaintiff seeks a permanent injunction on public policy grounds. (DE 60 at 9, n.7) (citing *Chanel, Inc. v. besumart.com*, 240 F. Supp 3d 1283, 1291 (S.D. Fla. 2016)). A district court's decision to grant or deny permanent injunctive relief is an act of equitable discretion. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Permanent injunctive relief is available when a plaintiff demonstrates that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. (*Id*.).

As noted above, Plaintiff seeks monetary damages based on the current market value of the stolen cryptocurrency. Plaintiff does not allege that monetary damages would be inadequate compensation, nor does the Amended Complaint identify any other harms

that flowed from Defendant's theft of Plaintiff's cryptocurrency. "Accordingly, Plaintiff has an adequate remedy at law, so a permanent injunction is unavailable in this action." *Bowen*, 2023 WL 4623594, at *7.

## IV. CONCLUSION

For the reasons discussed above, and upon careful review of the Report, the Motion, the record, and the applicable law, it is **ORDERED AND ADJUDGED** as follows:

1. Judge Goodman's Report (DE 62) is **OVERRULED**.
2. Plaintiff's Renewed Motion for Default Final Judgment (DE 60) is **GRANTED IN PART**. The Motion is granted as to liability.
3. Plaintiff shall file evidence of the monetary value of Bitcoin and USD Coin that supports Plaintiff's present-day damages calculation by **March 31, 2026**.
4. Pursuant to Federal Rule of Civil Procedure 58(a), the Court will separately issue a default final judgment.
5. All pending motions are **DENIED AS MOOT**. All hearings and deadlines are **CANCELED**. This case is **CLOSED**.

**DONE AND ORDERED** in Chambers in Miami, Florida on this 2nd day of March, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE